IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Ellen Peterson, <br><br> Plaintiff, <br><br> v. <br><br> Wal-Mart Associates, Inc., <br><br> Defendant. | Case No.: 24-cv-50456 <br><br> Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

In an average shift filling orders at Walmart, Plaintiff Ellen Peterson walked about 15,000 steps: carrying boxes, checking inventory, stacking items, stepping up, and jumping down off platforms.[1] Dkt. 30, ¶¶ 13–14. Although Peterson was known to exceed job expectations, *id.* at ¶¶ 83, 90, she repeatedly warned her manager that a torn ligament in one foot made it difficult to work. *Id.* at ¶ 35. She gradually lost cartilage and range of motion, became tired quickly, struggled to balance, and developed a slow, painful limp. *Id.* at ¶ 18. Still, nothing changed in the store until Peterson requested Family and Medical Leave Act ("FMLA") leave and sought Human Resources' permission to take short, hourly stretch breaks, as recommended by her doctor. *Id.* at ¶¶ 33, 40. Both requests were denied. *Id.* at ¶¶ 56, 45.

---

[1] This factual background only includes the necessary allegations to decide this motion. For this motion's purposes, moreover, the Court accepts as true Peterson's well-pleaded factual allegations and views them—and all reasonable inferences—in the light most favorable to her. *Landmark Am. Ins. Co. v. Deerfield Constr. Inc.*, 933 F.3d 806, 809 (7th Cir. 2019).

1

The next day, Peterson was fired. *Id.* at ¶¶ 59–61. Peterson sued Walmart under the Americans with Disabilities Act ("ADA"), alleging disability-based discrimination, retaliation, and failure to accommodate. Walmart moved for judgment on the pleadings, generally challenging the sufficiency of the allegations and, specifically, arguing that Peterson isn't a proper ADA plaintiff. Neither argument meets Walmart's burden under Rule 12(c), for the following reasons. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (moving party bears the burden of establishing a complaint's insufficiency). Walmart's motion is denied.

\* \* \*

A motion for judgment under Rule 12(c) is subject to the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). Under Rule 8, the plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a complaint to be plausible, the plaintiff's factual allegations—as opposed to any legal conclusions—must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 587 (7th Cir. 2009).

Walmart's 12(c) motion uses every curse word known to lawyers: "threadbare," "bare-bones," "boilerplate," "formulaic," "unsupported," "conclusory," and—if an

2

usually dense reader has somehow missed the gist—"woefully" inadequate. *See generally* Dkt. 43; Dkt. 57, 1. Ironically, *that* argument is unsupported. "[G]eneral propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905) (Holmes, J. dissenting). But from the few logical threads the Court can pull, Walmart wants to know the details: when exactly Peterson's injuries started, how long they'll last, what specialized qualifications she needs to fill orders, and how her mobility compares to an average person. *See, e.g.*, Dkt. 43, 8–10, 14. These are the types of facts that need not be plead. *See Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024) ("All the complaint need do is state a grievance. Details and proofs come later."); *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) ("Complaints initiate the litigation but need not cover everything necessary for the plaintiff to win; factual details and legal arguments come later."). Walmart will get its answers in discovery (and then some—rest assured). *See Shapo v. Engle*, No. 98 C 7909, 2001 U.S. Dist. LEXIS 26640, at *11 (N.D. Ill. May 24, 2001). For now, it's only entitled to a short and plain statement of the claims against it and their factual basis. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555; *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir.2013) (quoting *Iqbal*, 556 U.S. at 678).

Forgiving the occasional conclusion in Peterson's Complaint, the factual allegations are clear and detailed. In support of her retaliation claim, Peterson alleges that Walmart fired her for using FMLA benefits to treat her injury, essentially punishing her for being disabled. Dkt. 30, ¶ 61. On her discrimination claim, Peterson plausibly suggests that she was wrongfully terminated despite being able

3

to perform essential job functions; she can fill orders and carry products around the store with hourly stretch breaks. *Id.*, ¶ 41–44; *see Gogos v. AMS Mech. Sys.*, 737 F.3d 1170, 1172 (7th Cir. 2013). And, as for failure to accommodate, Peterson alleges that—despite several complaints to HR and management—Walmart summarily denied a reasonable request for short stretch breaks during long, physically demanding shifts. Dkt. 30, ¶¶ 35, 40, 45–47; *see EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797, 802 (7th Cir. 2005). That's enough for 12(c) purposes.

Peterson also pled a qualifying disability over Walmart's objection. The ADA defines "disability" broadly and encourages courts to do the same. 42 U.S.C. § 12102(4)(A); 42 U.S.C. § 12102(1). Relevant to this decision, a person is disabled when any physical impairment "substantially limits" their major life activities, such as standing, walking, lifting, or bending. 42 U.S.C. § 12102(2); *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 197 (2002). Walmart concedes that Peterson might moderately struggle with these activities, but rattles off another slew of adjectives (essentially, all synonyms for "vague"), suggesting that Peterson hasn't explained how her torn ligament substantially limits her walking. Dkt. 57, 7–10. The Court disagrees. Peterson alleges that she limped through the store slowly and stiffly, on a bruised and swollen foot, over eleven-hour shifts, three days a week. The Court accepts all well-plead allegations as true on Rule 12 motions, *Landmark Am. Ins. Co.*, 933 F.3d at 809, including Peterson's disability. So, to the extent Walmart believes it "debunk[ed]" Peterson's allegations, dkt. 57, 4, the Court encourages Walmart to save its investigative skills for discovery, not pleading. "This

4

is not the time, Cato." THE RETURN OF THE PINK PANTHER, Amazon Prime Video (ITC Entertainment 1975).

Returning to the proper scope of argument on a Rule 12 motion, Walmart argues that Peterson isn't a "qualified individual" under the ADA because she only suffers from an intermittent episodic injury—not a permanent or long-term disability. *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995) ("Intermittent, episodic impairments are not disabilities [in the Seventh Circuit], the standard example being a broken leg."). The Cort hopes that's true for Peterson's sake. But it's too soon to say whether Peterson's limitations are permanent or long-term. A case Walmart's counsel should be familiar with—*Rosas v. Walmart Inc.*, No. 24 CV 7409, 2025 U.S. Dist. LEXIS 46908, at *18-19 (N.D. Ill. Mar. 14, 2025)—explains why. In *Rosas*, Judge Jenkins rejected Walmart's nearly identical, formulaic, conclusory, boilerplate Rule 12 arguments to dismiss an ADA claim. *Id*. For now, the Court only notes that Walmart hasn't shown Peterson's injuries to be intermittent or episodic, despite bearing the burden on this motion. There's simply no indication that Peterson's injuries come and go. And unlike a sprained ankle or a fractured bone, absent surgical intervention (the success of which is questionable) cartilage loss is generally permanent. § 7:4. Osteoarthritis, Soc. Sec. Disab. Prac. § 7:4. Drawing that reasonable (if unfortunate) inference in Peterson's favor, Peterson adequately states ADA claims for discrimination, retaliation, and failure to accommodate.

5

Based on its common sense and judicial experience—that is to say, again, based on *Twombly* and *Iqbal*—the Court denies Walmart's motion for judgment on the pleadings [42].

Entered: August 13, 2025      By:_____
                                              Iain D. Johnston
                                              U.S. District Judge